# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CRIMINAL ACTION NO. 5:13-CR-00029-TBR

UNITED STATES OF AMERICA

v.

EYONGAGBANKEH TATAW

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Eyongagbankeh Tataw's appeal from the order of the Magistrate Judge denying his motion to suppress evidence. (Docket No. 5.) The Government has responded. (Docket No. 6.) Defendant Tataw has replied. (Docket No. 7.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Defendant Tataw's appeal and affirm the Magistrate Judge's denial of the motion to suppress evidence.

## BACKGROUND

On July 14, 2012, Defendant Tataw was stopped upon driving up to Gate 7 at Fort Campbell at approximately **2:50 AM** by David Maddox, a security guard at Fort Campbell.[1] (Docket No. 4, Page 4.) As a security guard, Maddox does "access control" and "violations of traffic" and "reports them to the Military Police." *Id.* Maddox

---

[1] Tataw was the only person in the vehicle.

checked Tataw's valid identification card to ensure he was permitted to be on the post.[2] *Id.* at 5. Maddox noticed a "very strong odor of alcohol coming from [Tataw]." *Id.* As a result, Maddox decided to hold him and call the Military Police because he suspected Tataw may have been drinking and driving. Maddox asked Tataw to turn off his vehicle and give him his driver's license, insurance, and registration. Thereafter, Maddox did not take any steps to further the investigation himself. Maddox testified that the Military Police arrived approximately 10-15 minutes later. *Id.* at 6. The exact amount of time which it took for a Military Police Officer to arrive upon the scene is not clear from the record, although most of the evidence and testimony indicates it was approximately 15-25 minutes later.

Sergeant Steven Joshua Beard, a Military Police Officer, recalls being dispatched to Gate 7 at approximately **3:00 AM** for suspicion of DUI.[3] (Docket No. 4, Page 7.) He was told there was a "push on it" because the person that was being held was getting irate and belligerent. *Id.* at 8. Accordingly, he went to Gate 7 under a "Code 3," which means he preceded there with his lights and sirens on. *Id.* Beard testified that he arrived on the scene "somewhere **between 3:11 and 3:15 [AM]**." (Docket No. 4, Page 18.)

Upon arriving at Gate 7, Beard detected an odor of alcohol being emitted from the vehicle. (Docket No. 4, Page 9.) Beard also observed that Tataw's eyes were

---

[2] Maddox testified that he took this course of action, checking a driver's identification card, "for all vehicles." (Docket No. 4, Page 4.)
[3] A contemporaneous report appears to document that Beard was actually dispatched at **3:09 AM**. (Docket No. 4, Page 17.) From where he was coming from, he testified it would take him anywhere between a couple of minutes to five minutes to reach Gate 7, which would put his arrival at somewhere **between 3:11 and 3:15 AM**. (Docket No. 4, Page 18.)

bloodshot and he had a slight glaze in his eyes. After running all of Tataw's information into the system, Beard determined that he had no outstanding warrants. *Id.* Beard then advised Tataw that due to the smell of alcohol he was going to "go ahead and issue him the field sobriety tests for suspicion of DUI." *Id.* Beard "pulled Tataw outside of the vehicle" in order to perform these tests. *Id.* Beard testified that he actually administered the field sobriety tests "shortly after" arriving on the scene, approximately around **3:30 AM**. *Id.* at 13. Beard testified that Tataw was not cooperative during the administering of these tests, stating he was belligerent and yelling obscenities the entire time. *Id.* He noted that while normally these tests take three to five minutes, they can take longer if the suspect is uncooperative. *Id.*

Staff Sergeant Dycus of the Military Police was called to Gate 7 before Beard at 3:07 AM for a possible DUI. At that time he was responding to another call, which is why the dispatcher also contacted Sergeant Beard. Dycus got to Gate 7 at approximately **3:48 AM**. (Docket No. 4, Page 38.) When he arrived, he states that he saw standard field sobriety tests being administered by Beard and Specialist Forsythe.[4]

Tataw failed the field sobriety tests administered by Beard and was transported to a military police station. Tataw then consented to a breathalyzer test which indicated

---

[4] The Court notes that Tataw used the testimony by Dycus that the field sobriety tests were ongoing when he arrived at 3:48 AM to argue that Beard did not arrive at Gate 7 until **3:36 AM**. (Docket No. 5, Page 4.) This is based on Beard's testimony that it "could take anywhere between three to five minutes upwards to ten minutes depending on the cooperation you receive" to perform field sobriety tests. Under this theory, the "wait" Tataw had to endure would be increased from approximately 25 minutes to approximately 40 minutes.

However, there was a substantial amount of testimony indicating that Tataw was extremely uncooperative during the field sobriety tests. Therefore, these tests would have taken much longer than normal, which would explain why they may have still been ongoing at 3:48 AM. Presumably, Tataw would also have been uncooperative during any pre-test procedures, such as checking for outstanding warrants, which would have increased the time those took as well. In any event, even assuming Defendant's theory is correct, the Court finds it would not be determinative and the extended seizure would still be reasonable.

a blood alcohol content of 0.137%. During trial, Tataw moved to suppress the field sobriety tests and breathalyzer test. The Magistrate Judge denied this motion. Subsequently, Tataw was found guilty of "drunk driving on federal property in Kentucky." (Docket No. 5, Page 2.) Tataw now appeals the Magistrate Judge's denial of his motion to suppress.[5]

## STANDARD

Defendant Tataw has asserted the standard of review is *de novo*, (Docket No. 5, Page 5), and the Government has not asserted that a different standard of review is required. *See United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008) (upholding district court's factual finding unless clearly erroneous, but reviewing legal conclusions *de novo*); Fed. R. Crim. P. 58 (g)(2)(D) ("The scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."). The Court will review the legal conclusions of the Magistrate Judge denying the motion to suppress *de novo*.[6]

## DISCUSSION

Defendant Tataw's argument that his motion to suppress should have been granted is based upon the time period of the investigation. Specifically, Tataw argues

---

[5] This appeal is taken from the Magistrate Judge's order and judgment entered orally on May 1, 2013, and in writing on May 14, 2013.

[6] The Court notes that the Magistrate Judge did not explicitly make any factual findings, which would be upheld unless clearly erroneous:
> I'm going to deny the motion to suppress. With regard to the unreasonable delay, I find that the delay was not unreasonable. I'm not setting a precedent that the court could says there's not a time period that could be considered unreasonable, but I do not believe it's been met in this case.

(Docket No. 4, Page 53.)

the extended length of time which he was "seized" while awaiting on Military Police to arrive made the seizure unconstitutional.[7] Essentially, Tataw claims he was held unreasonably long waiting for another officer—Sergeant Beard—to arrive to do field sobriety tests. On the other hand, the Government argues that the time period of the investigation was reasonable and permissible. Specifically, the Government argues that the security officer's call to the military police was justified and necessary.

Admittedly, it is unknown exactly how much time lapsed between when Defendant was first seized and the first Military Police Officer, Sergeant Beard, arrived. At a maximum, 25 minutes could have lapsed between Defendant's initial arrival at the gate and when the first military police officer arrived to investigate.[8] (*See* Docket No. 7 Defendant's Reply Brief.) Accordingly, the Court will determine whether a 25 minute lapse under these circumstances renders the seizure unconstitutional because it violates the Fourth Amendment.[9]

The Court finds that the delay Tataw suffered while waiting for Sergeant Beard to arrive did not violate his Fourth Amendment rights. Accordingly, the Court will affirm the Magistrate Judge's ruling and deny the motion to suppress. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures. The authority and limits of the Amendment apply to investigative stops of vehicles such as occurred here." *United States v. Sharpe*, 470 U.S. 675, 682 (1985).

---

[7] "Tataw's leading claim is that the prolongation of the detention by 20 to 25 minutes was unreasonable." (Docket No. 7 Defendant's Reply Brief, Page 1.)
[8] A determination of a lapse of 25 minutes would result between the initial stop by Maddox at 2:50 AM and the latest possible estimate of when Beard arrived at Gate 7 at 3:15 AM.
[9] As discussed above, however, the Court would reach the same result even if it was a 40 minute delay.

While not directly testified to, there are several obvious and reasonable reasons why Maddox would choose to wait for a Military Police Officer to arrive before continuing any investigation.[10] First, he may not have had the proper training to perform field sobriety tests, or the Military Police may be better equipped/trained to perform these tests. Second, in certain situations it would be prudent to have another officer present before conducting any further investigations based on safety concerns in case things got out of hand and for evidentiary reasons as the additional officer is another witness. This would be particularly true when an uncooperative and "belligerent" suspect is involved, as is the case here. Finally, if Maddox were to continue the investigation on his own it would presumably make it difficult to contemporaneously perform his job duties of "access control." Therefore, calling the Military Police did not mean that the investigation was not diligently pursued or that Tataw's detention was "unnecessarily prolonged." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Accordingly, the Court believes the detention of Tataw meets the Fourth Amendment standard of reasonableness. *See Sharpe*, 470 U.S. 675, 686 (1985) (finding an approximate 15-minute detention of a suspect driver while police waited on DEA agent to arrive "clearly [met] the Fourth Amendment's standard of reasonableness").

Tataw's citation to cases for the proposition that the detention was unreasonable are distinguishable or do not support his position. *Moore* involved police ceasing their

---

[10] Tataw appears to take issue with the assertion that there was some sort of policy that prevented Maddox from continuing to investigate Tataw, alleging such a claim is unsupported by the record. (Docket No. 7, Page 2.) The Court merely notes that the record is not conclusive one way or another, but at the very least supports the existence of such a policy. In any event, whether or not there was actually such a policy is not determinative. As for the argument that such a policy would not be reasonable, as will be discussed below, at least under these circumstances, the decision to call a Military Police Officer was reasonable.

investigation of a DUI suspect for 48 minutes solely to await the arrival of an accident reconstruction investigator, consistent with department policy. *Commonwealth v. Moore*, 58 Va. Cir. 579 (2000). The Circuit Court of Virginia held that the State failed to justify the delay of the second officer and that officer's presence was not necessary "to diligently pursue a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 8. Essentially, the accident reconstruction investigator was completely unrelated to the furtherance of any investigation of the suspect for driving under the influence. On the other hand, in this case, Sergeant Beard's arrival was not only directly related to the investigation—he actually took over and *performed* the investigation upon arrival. As stated above, there are many logical reasons why Beard may have been a better candidate to perform the investigation and/or why it may have been desirable to have two officers present when the investigation was performed.

The Court notes that the Supreme Court has warned of the possibility judges engaged in post hoc evaluations could "always imagine" some way "in the abstract" the investigation could "have been accomplished by less intrusive means," thereby rendering the search unreasonable. *Sharpe*, 470 U.S. at 686-87. "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it." *Id.* at 687. In this case, Maddox detected "a very strong of alcohol alcohol" coming from a driver at 2:50 AM whose "eyes were really glassed over." (Docket No. 4, Page 5.) He then immediately called dispatch to request the Military Police come to Gate 7 to continue the investigation. Furthermore, when Beard got the dispatch call he proceeded there quickly under a "Code 3." While Defendant appears to assert that Maddox should have continued the

investigation by asking Tataw about alcohol consumption, engaging him in conversation, having him exit the vehicle, or running a warrants check, (Docket No. 5, Page 7), the Court does not believe this was required given the odor he detected and observations concerning Tataw's eyes.[11] Accordingly, the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Sharpe*, 470 U.S. at 686.

Relatedly, many courts have concluded that extended detentions of people reasonably suspected of crimes while awaiting canine units is permissible *See, e.g., State v. Robbs*, 139 N.M. 569, 57 (2006); *United States v. French*, 974 F.2d 687, 690, 692 (6th Cir. 1992) (drug dog called from fifty miles away). In a variety of other circumstances, Courts have upheld detentions longer than 25 and even 40 minutes when there is a reasonable suspicion of a crime. *See, e.g., People v. Lidgren*, 739 P.2d 895, 895-96 (1987) (upholding decision to detain suspects for approximately one hour in order to photograph clothing in back seat that police believed to be stolen); *French*, 974 F.2d 687, 690, 692 (6th Cir. 1992) (drug dog called from fifty miles away). While there is no "bright line" rule establishing a period of time upon which a seizure becomes unreasonable, a review of the facts and circumstances surrounding this case lead the Court to conclude the seizure was reasonable. *See Sharpe,* 470 U.S. at 685.[12]

---

[11] *United States v. Urrieta* is not applicable because it involved a *traffic stop* and subsequent detention that was unconstitutionally prolonged because of an officer's mistaken belief that a suspect's Mexican driver's license was invalid. 520 F.3d 569, 579 (6th Cir. 2008); *see, e.g., State v. Robbs*, 139 N.M. 569, 577 (2006) (finding Defendant's reliance on a case was misplaced because that case involved a traffic violation, while *Robbs* involved a stop to investigate for reasonable suspicion of possession to distribute methamphetamine). In this case, any alleged prolonging was based on a belief that Tataw was driving under the influence.

[12] In concluding that the seizure was reasonable, the Court notes the testimony that Tataw was "less than cooperative" throughout all interactions is undisputed. In fact, dispatch told Beard to proceed to Gate 7 under a "Code 3" because the person being held there was getting irate and belligerent. This

Accordingly, the Court will **DENY** Defendant Tataw's appeal from the Magistrate Judge and affirm the order denying his motion to suppress.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED as follows:

Defendant Tataw's appeal is **DENIED**. The Court **AFFIRMS** the Magistrate Judge's denial of the motion to suppress.

IT IS SO ORDERED.

Date:

cc: Counsel

---

uncooperativeness would have exasperated any delay that Tataw now claims is the basis for the violation of his Fourth Amendment rights. Furthermore, the fact he was so uncooperative would make the decision to call for Military Police and wait for them to arrive to continue the investigation even more reasonable.